IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

UNITED STATES OF AMERICA,

Plaintiff,

v.

CIVIL ACTION NO.

UNITED TOWS, LLC,
Defendant.

## COMPLAINT

Plaintiff, the United States of America, alleges as follows:

## INTRODUCTION

1.  The United States brings this action to enforce the provisions of the Servicemembers
    Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, against United Tows, LLC
    ("Defendant"), for illegally auctioning, selling, or otherwise disposing of the motor
    vehicles and personal effects of SCRA-protected servicemembers.

2.  The purpose of the SCRA is to provide servicemembers with certain legal protections to
    enable them to devote their entire energy to the defense needs of the nation.  *See* 50
    U.S.C. § 3902.  One of those protections is the requirement that a court review and
    approve any action to foreclose or enforce a lien on the property or effects of a
    servicemember during any period of military service of the servicemember and for 90
    days thereafter.  *See* 50 U.S.C. § 3958.

3.   In a proceeding to foreclose or enforce a lien against a servicemember, the court may stay the proceeding for a period of time as justice and equity require, or it may adjust the obligation. *See* 50 U.S.C. § 3958. The court may also appoint an attorney to represent the servicemember, require the lienholder to post a bond with the court, and issue any other orders it deems necessary to preserve the interests of all parties. *See* 50 U.S.C. § 3931.

4.   By failing to obtain court orders before foreclosing and/or enforcing liens on servicemembers' vehicles and other personal property, Defendant denied servicemembers the right to obtain a court's review of whether the foreclosure or enforcement should be delayed or the lien adjusted to account for their military service.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C § 1345, and 50 U.S.C § 4041.

6.   Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events giving rise to the United States' claims occurred in the Northern District of Texas and the defendant does business within this judicial district.

## DEFENDANT

7.   Defendant is a Texas limited liability company with its principal place of business located at 7054 South Central Expressway, Dallas, Texas 75216.

8.   At all times relevant to this action, Defendant owned and/or operated a motor vehicle towing and storage business in Dallas, Texas.

## FACTUAL ALLEGATIONS

9.      On February 14, 2018, the Chief of Community Legal Services for the Department of the
        Air Force notified the Department of Justice (the "Department") of a complaint regarding
        the Defendant's compliance with Section 3958 of the SCRA, 50 U.S.C. § 3958.

*Defendant's Practice of Towing and Auctioning Motor Vehicles*

10.     In the course of operating its business, Defendant tows and stores motor vehicles with
        and without the consent of the vehicles' owners.

11.     Under Texas law, Defendant is entitled to a statutory lien on any motor vehicle that is
        towed and stored at its facility in the amount of the charges for the care of the vehicle,
        including reasonable charges for towing.  *See* Texas Property Code ("Tex. Prop. Code")
        § 70.003(c).

12.     Texas law gives Defendant the right to enforce its statutory lien by selling or disposing of
        the vehicle at a public sale.  *See* Tex. Prop. Code § 70.006.

13.     In the course of operating its business, Defendant regularly enforces its liens by selling or
        disposing of motor vehicles at public sales.

14.     Defendant has no written policies or procedures regarding SCRA compliance.

15.     Defendant has no policy or practice of determining whether the motor vehicles it
        auctions, sells, or otherwise disposes of are owned by SCRA-protected servicemembers.

*Airman First Class Fassil Mekete*

16.     Airman First Class Fassil Mekete has been an active duty member of the United States
        Air Force since August 29, 2017.

17.     On or about August 29, 2017, Airman First Class Mekete was ordered to report for an eight-week basic military training course at Joint Base San Antonio-Lackland in San Antonio, Texas.

18.     When Airman First Class Mekete left to attend his basic training course in San Antonio, he left his 1998 Toyota Corolla, Vehicle Identification Number 1NXBR12E9WZ007362 (the "Vehicle"), parked at Chang Lee Tae Kwon Do, a martial arts school located in Northlake Shopping Center at 10233 Northwest Highway, Dallas, Texas 75238.

19.     Airman First Class Mekete had previously taught classes at Chang Lee Tae Kwon Do and had received permission from its owner to leave the Vehicle parked there while he was away at basic training.

20.     As Airman First Class Mekete had terminated the lease on his apartment and did not have any family in the Dallas area, he stored some of his personal property in the Vehicle, including, but not limited to, a laptop and laptop case, gym bag, and personal documents.

21.     On September 28, 2017, Defendant towed Airman First Class Mekete's Vehicle from the Northlake Shopping Center parking lot to its tow lot located at 7054 South Central Expressway, Dallas, Texas 75216.

22.     On or about October 7, 2017, while Airman First Class Mekete was still at basic training, his friend, M.R., noticed that the Vehicle was no longer parked in the Northlake Shopping Center parking lot.

23.     M.R. called Defendant and confirmed that it had towed the Vehicle.  M.R. explained that the owner of the Vehicle was out of town performing military service and would not be able to claim the Vehicle until after he completed basic training.  Defendant told M.R. that the Vehicle would be sold after 45 days on the lot.

24.    M.R. attempted to contact Airman First Class Mekete to inform him that Defendant had

towed the Vehicle but was unable to reach him due to restrictions on communications

imposed by the military during basic training.

25.    At some point between October 20, 2017 and October 27, 2017, M.R.was able to contact

Airman First Class Mekete and told him that the Vehicle had been towed.

26.    Airman First Class Mekete called Defendant and spoke with a woman who identified

herself as the owner.  Airman First Class Mekete explained that he was an active duty

servicemember and that, due to his current military duties, he was unable to claim the

Vehicle at that time.

27.    The woman identifying herself as the owner of Defendant told Airman First Class

Mekete that she did not believe he was a servicemember and that if he did not claim the

Vehicle and pay all towing and storage fees, the Vehicle would be sold.

28.    After completing basic military training on October 27, 2017, Airman First Class Mekete

received orders requiring him to immediately report for technical training at Sheppard Air

Force Base near Wichita Falls, Texas.

29.    As Airman First Class Mekete was unable to return to Dallas, he executed a special

power of attorney authorizing M.R. to collect his personal belongings, including his

laptop and laptop case, gym bag, and personal documents, from the Vehicle.

30.    When M.R. went to retrieve these items from the Vehicle, the laptop and laptop case

were missing and the gym bag appeared to have been cut with a blade.

31.    On November 17, 2017, Defendant auctioned Airman First Class Mekete's Vehicle.

32.    Defendant did not obtain a court order authorizing the sale of the Vehicle prior to

auctioning it.

33.   As the result of Defendant's illegal actions, Airman First Class Mekete was left without any reliable means of transportation at his new base.  He had to walk, pay for ride-sharing or taxi services, or rely on rides from friends to get to work or run errands.  This situation was extremely stressful, inconvenient, and costly for him.

34.   On April 26, 2018, Airman First Class Mekete purchased a replacement vehicle, a used 2016 Toyota Corolla, for $13,132.

35.   Airman First Class Mekete also incurred additional fees and costs related to the purchase and financing of the replacement vehicle.

***Other Aggrieved Servicemembers***

36.   Between October 17, 2014 and April 26, 2019, Defendant auctioned off at least four other vehicles that were owned by SCRA-protected servicemembers:

   a.   A 2001 Lincoln LS, Vehicle Identification Number 1LNHM87A11Y618415, registered to servicemember A.H., that was auctioned by Defendant without a court order on July 31, 2015.  Servicemember A.H. has been serving on active duty with the U.S. Air Force since May 4, 2010;

   b.   A 2000 Lincoln Town Car, Vehicle Identification Number 1LNHM82W9YY890871, registered to servicemember A.P., that was auctioned by Defendant without a court order on September 16, 2016.  Servicemember A.P. has been serving on active duty with the U.S. Air Force since February 24, 2004;

   c.   A 2004 Toyota Rav4, Vehicle Identification Number JTEGD20V240003803, registered to servicemember D.N., that was auctioned by Defendant without a court order on July 7, 2017.  Servicemember D.N. served on active duty with the U.S. Army from August 10, 2015 to January 9, 2018; and

d.  A 2002 Pontiac Grand Am, Vehicle Identification Number

1G2NF12E22C174483, registered to servicemember A.I., that was auctioned by

Defendant without a court order on October 12, 2018.  Servicemember A.I. has

been serving on active duty with the U.S. Coast Guard since September 20, 2011.

**VIOLATIONS OF THE SERVICEMEMBERS CIVIL RELIEF ACT**

37.   Plaintiff re-alleges and incorporates by reference the allegations set forth above.

38.   By the conduct described in the foregoing paragraphs, Defendant has enforced liens on

the property and effects of SCRA-protected servicemembers without authorizing court

orders, in violation of 50 U.S.C. § 3958.

39.   The SCRA provides two alternative bases under which the Attorney General may sue to

enforce the statute, either one of which is sufficient to support this lawsuit.

40.   By auctioning the motor vehicles and personal effects of SCRA-protected

servicemembers without court orders, Defendant has both:

a.   engaged in a pattern or practice of violating Section 3958(a)(1) of the SCRA, 50

U.S.C. § 3958(a)(1), thus triggering the Attorney General's authority to sue under

50 U.S.C. § 4041(a)(1); and

b.   engaged in violations of Section 3958(a)(1) that raise an issue of significant

public importance, thus triggering the Attorney General's authority to sue under

50 U.S.C. § 4041(a)(2).

41.   The servicemembers whose motor vehicles and personal effects were auctioned, sold, or

otherwise disposed of without authorizing court orders in violation of the SCRA are

aggrieved persons pursuant to 50 U.S.C. § 4041(b)(2) and have suffered damages as a

result of Defendant's conduct.

42.     Defendant's conduct was intentional, willful, and taken in disregard for the rights of

servicemembers.

## RELIEF REQUESTED

WHEREFORE, the United States requests that the Court enter an ORDER that:

1.      Declares that Defendant's conduct violated the SCRA;

2.      Enjoins Defendant, its agents, employees, and successors, and all other persons and

entities in active concert or participation with it, from:

      a.      enforcing liens on motor vehicles and personal effects of SCRA-protected

            servicemembers without court orders, in violation of the SCRA, 50 U.S.C.

            § 3958;

      b.      failing or refusing to take such affirmative steps as may be necessary to restore, as

            nearly as practicable, all identifiable victims of Defendant's illegal conduct to the

            position they would have been in but for that illegal conduct; and

      c.      failing or refusing to take such affirmative steps as may be necessary to prevent

            the recurrence of any illegal conduct in the future and to eliminate, to the extent

            practicable, the effects of Defendant's illegal conduct;

3.      Awards appropriate monetary damages to all identifiable victims of Defendant's

violations of the SCRA, pursuant to 50 U.S.C. § 4041(b)(2); and

4.      Assesses civil penalties against Defendant in order to vindicate the public interest,

pursuant to 50 U.S.C. § 4041(b)(3).

The United States prays for such additional relief as the interests of justice may require.

Respectfully submitted,

DATED: September 28, 2020

|  | WILLIAM P. BARR |
|  | Attorney General |

| ERIN NEALY COX | ERIC S. DREIBAND |
| United States Attorney | Assistant Attorney General |
|  | Civil Rights Division |

| /s/ Lisa R. Hasday | /s/ Audrey M. Yap |
| LISA R. HASDAY | SAMEENA SHINA MAJEED |
| Assistant United States Attorney | Chief |
| United States Attorney's Office | ELIZABETH A. SINGER |
| Northern District of Texas | Director, U.S. Attorneys' Fair |
| 1100 Commerce Street, Third Floor | Housing Program |
| Dallas, TX 75242-1699 | AUDREY M. YAP |
| Telephone: (214) 659-8737 | Trial Attorney |
| Fax: (214) 659-8807 | Civil Rights Division |
| Email: lisa.hasday@usdoj.gov | U.S. Department of Justice |
|  | Housing and Civil Enforcement Section |
|  | 4 Constitution Square |
|  | 150 M Street NE |
|  | Washington, D.C. 20530 |
|  | Telephone: (202) 305-0015 |
|  | Fax: (202) 514-1116 |
|  | Email: audrey.yap@usdoj.gov |